# IN THE UNITED STATES DISTRICT COURT
# OF THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARLON LAYNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| | ) |
| | ) |
| | ) |
| UHS OF ROCKFORD, LLC | ) |
| d/b/a ROCKFORD CENTER | ) |
| | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

## INTRODUCTION

1. Plaintiff Marlon Layne ("Plaintiff"), files this action against UHS of Rockford, LLC d/b/a Rockford Center ("Defendant" or "Rockford"), for back pay, front pay, compensatory damages, punitive damages and attorneys' fees for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 as amended ("ADA"), the Family Medical Leave Act 29 U.S.C. § 2601 *et seq.* ("FMLA") and breach of the covenant of good faith and fair dealing.

## JURISDICTION

2. This Court has federal question jurisdiction over this cause of action pursuant to 28 U.S.C § 1331.

3. This Court has supplemental jurisdiction over all state causes of action pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 29 U.S.C. § 1331, as well as 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff is a resident of New Castle County, Delaware, who at all times relevant to this Complaint, was an employee of Defendant Rockford.

6. Defendant Rockford is a Delaware Corporation that has a place of business at 100 Rockford Drive, Newark, Delaware 19713. At all times relevant hereto, Defendant was an "Employer" as defined by 42 U.S.C. § 2000e(b).

## ADMINISTRATIVE PROCESS

7. On January 2, 2020, Plaintiff filed a Charge of Discrimination with the Delaware Department of Labor, which was cross-filed with the Equal Employment Opportunity Commission ("EEOC").

8. On August 6, 2021, Plaintiff received a Right to Sue Notice from the EEOC. See Exhibit A.

9. Plaintiff has filed this action under Title VII and the ADA within ninety (90) days after receipt of his Right to Sue Notice from the EEOC.

## FACTS

10. Plaintiff began his employment with Defendant Rockford on December 15, 2016, in the position of Registered Nurse, Nursing Supervisor.

11. As part of Plaintiff's role as Nursing Supervisor, he was tasked with conducting annual evaluations of the employees he supervised.

12. During Plaintiff's employment, John Mckenna, a Caucasian male and CEO of Defendant Rockford, actively discouraged Plaintiff from giving favorable performance reviews to

the African Americans and other minority employees Plaintiff supervised. Mr. Mckenna intentionally changed Plaintiff's evaluations of his African American employees in which he significantly lowered their evaluations.

13. Mr. Mckenna did not make any changes to Caucasian employee's evaluations.

14. Mr. Mckenna intentionally refused to give raises to African Americans employees even though they performed highly and were eligible for the raise. Mr. McKenna regularly gave Caucasian employees raises.

15. Additionally, Defendant Rockford only provided sign on bonuses to its Caucasian employees while it denied sign on bonuses to African American employees.

16. Defendant Rockford gave Nicole Harris, a Caucasian female, and Bryan Kelly, a Caucasian male, both employees who were hired after Plaintiff and with significantly less experience than Plaintiff, sign on bonuses when they began their employment at Defendant Rockford. Plaintiff, an African American with more experience than Ms. Harris and Mr. Kelly, was not provided a sign on bonus by Defendant Rockford.

17. Upon information and belief, multiple other African American employees, including Monique Douglas and Katrina Johnson, were also not provided sign on bonuses by Defendant Rockford.

18. In accordance with Defendant Rockford's policy, employees' salaries are based largely in part on their level of experience. When Ms. Douglas left her position as Nursing Manager, Ms. Harris was chosen as her replacement and immediately received a higher salary than Ms. Douglas, despite the fact Ms. Douglas had more experience than Ms. Harris.

19. Defendant Rockford quickly promoted Ms. Harris from Registered Nurse to Nurse Supervisor and then to Nurse Manager. Plaintiff, an African American with more experience than Ms. Harris, was not afforded the same promotional opportunities based upon his race.

20. Ms. Harris, in her position as Nursing Manager, was paid more than Plaintiff, despite only having approximately one to two years of experience compared to Plaintiff's fourteen years of experience.

21. Mr. Kelly began his employment with Defendant Rockford straight out of nursing school in the position of Registered Nurse. Defendant Rockford then promoted Mr. Kelly to the position of Nurse Supervisor and paid him the same rate as Plaintiff, despite the fact Plaintiff had fourteen years of experience compared to Mr. Kelley's one year of experience

22. Plaintiff reported Defendant Rockford's discriminatory conduct to Ms. Jessica Stewart in Human Resources and to Ms. Michele Preston, Director of Nursing. Ms. Preston in turn reported Plaintiff's concerns to Defendant Rockford's Corporate Management.

23. Specifically, Ms. Preston reported Mr. Mckenna's discriminatory and hostile behavior towards Plaintiff and other African Americans employees, and further, that Mr. Mckenna ultimately terminated Plaintiff on the basis of his race.

24. On June 7, 2019, Plaintiff was called into a meeting with Ms. Preston and Ms. Naomi Poole of Human Resources and was issued a written reprimand for allegedly engaging in a personal relationship with Ms. Tammy Clark, a Mental Health Technician, in violation of Defendant Rockford's policies.

25. Plaintiff vehemently denied having a personal relationship with Ms. Clark and reported his relationship with Ms. Clark was strictly platonic. Plaintiff reported that when Ms.

Clark began to indicate to Plaintiff that she perceived their relationship as something more than friendship, Plaintiff advised her he did not feel the same way.

26. Plaintiff additionally reported to Ms. Preston and Ms. Poole that Mr. Mckenna was engaged in a sexual relationship with two Caucasian Rockford employees. Mr. Mckenna and the two Caucasian employees were never disciplined or counseled for engaging in sexual relationships with a co-worker.

27. Ms. Clark was unhappy with Plaintiff's response to her romantic advances, and therefore, began harassing and threatening Plaintiff. Ms. Clark threatened to "fuck up" Plaintiff's car and in fact did damage Plaintiff's car in the employee parking lot.

28. As a result of Defendant Rockford's investigation into Ms. Clark's allegations of a personal relationship with Plaintiff, Defendant Rockford advised Plaintiff it could not confirm he was in an intimate relationship with Ms. Clark.

29. The June 7, 2019 disciplinary meeting ended with an agreement that Ms. Clark would not be put on the same schedule as Plaintiff moving forward. However, on August 12, 2019 and August 13, 2019, Defendant Rockford placed Ms. Clark on the same shift as Plaintiff.

30. Plaintiff immediately reported this shift issue to Ms. Preston and Ms. Poole, however, nothing was done.

31. Ms. Clark continued harassing Plaintiff during his shifts and continuously made comments about her infatuation with Plaintiff to both fellow staff and Rockford patients.

32. It was reported to Plaintiff that Ms. Clark stated she was falsifying text messages to take Plaintiff down if he ever complained about her. Plaintiff again reported Ms. Clark's harassing conduct to both Ms. Poole and Ms. Preston.

33. On August 20, 2019, Plaintiff requested leave to tend to the hypertension, stress and anxiety he was experiencing which was a direct result of Defendant's discriminatory and retaliatory actions. In response, Ms. Poole stated to Plaintiff that if he did not come into work, he would be terminated.

34. On August 23, 2019, Defendant Rockford suspended Plaintiff without pay pending another investigation into his alleged relationship with Ms. Clark.

35. On September 3, 2019 and September 4, 2019, Plaintiff provided Defendant with his FMLA paperwork.

36. On September 6, 2019, Plaintiff was terminated for an alleged violation of employee conduct and work rules policy.

37. Plaintiff has suffered physical, emotional and economic damage as a result of the aforementioned conduct.

## CLAIMS AND DAMAGES

Based upon the above allegations, Plaintiff maintains the following legal claims against Defendants:

### COUNT I
### Discrimination Based on Race in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e *et al*.)

38. The allegations of Paragraphs 1 through 37 are incorporated by reference as if fully restated herein.

39. Defendant employs fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 2000e(b).

40. Plaintiff received a Right to Sue letter from the EEOC on August 6, 2021.

41. Plaintiff has satisfied all statutory prerequisites for filing this action.

42. During Plaintiff's employment with Defendant, he was discriminated against based upon his race in violation of Title VII.

43. Title VII makes it an unlawful employment practice to, among other things, "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e(a)(1).

44. Plaintiff is a member of a protected class of which Defendant was aware.

45. Plaintiff was qualified for the position of Registered Nurse, Nursing Supervisor.

46. Plaintiff suffered an adverse employment action when Defendant Rockford suspended Plaintiff and then terminated his employment for allegedly violating Defendant Rockford's policies.

47. Defendant discriminated against Plaintiff on the basis of his race when it terminated Plaintiff as a result of the same or similar actions as those not within his protected class.

48. Plaintiff was treated differently than his white counterparts in the terms and conditions of Plaintiff's employment

49. Defendant intentionally gave its African American employees lower performance evaluations than its Caucasian employees.

50. Defendant intentionally refused to provide monetary raises and sign on bonuses to its African American employees, including Plaintiff, while providing its Caucasian employees with monetary raises and sign on bonuses.

51. Defendant terminated Plaintiff for an alleged violation of Rockford's employee conduct and work rules policy. Defendant did not discipline or terminate its Caucasian employees who engaged in, *inter alia*, violations of Rockford's employee conduct and work rules policy.

52. Plaintiff has suffered damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, compensatory damages and the costs of bringing this action.

## COUNT II
### Discrimination in Violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*

53. The allegations of Paragraphs 1 through 52 are incorporated by reference as if fully restated herein.

54. Defendant employs fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 12111(3).

55. At all times relevant hereto, Plaintiff was employed by Defendant and is an "Employee" as defined by 42 U.S.C. § 12111(4).

56. Under the Americans with Disabilities Act, "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to the discharge of employees and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

57. Plaintiff was disabled as defined under the ADA.

58. Plaintiff suffers from hypertension, stress and anxiety.

59. Plaintiff is a "qualified individual" who could perform the essential functions of his position with a reasonable accommodation of leave to tend to his disability.

60. On or around August 20, 2019, Plaintiff disclosed his disabilities to Defendant Rockford.

61. Plaintiff suffered an adverse employment action when he was terminated on September 6, 2019 as a result of disclosing his disabilities and requesting leave under the ADA.

62. Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, as well as punitive damages and attorneys' fees.

## COUNT III
### Failure to Accommodate in Violation of the
### Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et. seq.

63. The allegations of Paragraphs 1 through 62 are incorporated by reference as if fully restated herein.

64. Defendant employs fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 1211(4).

65. At all times relevant hereto, Plaintiff was employed by Defendant and is an "Employee" as defined by 42 U.S.C. § 12111(4).

66. Plaintiff received a Right to Sue Letter from the EEOC on August 6, 2021. Plaintiff has satisfied all statutory perquisites for filing this action.

67. 42 U.S.C. § 12112(b)(5)(A) provides an employer must make reasonable accommodations to the known physical or mental limitations of a qualified individual with a disability.

68. Plaintiff was disabled as defined under the Americans with Disabilities Act.

69. Plaintiff is a "qualified individual" who could perform the essential functions of his position, provided he was granted the accommodation of leave.

70. Defendant was aware of Plaintiff's disability and requests for accommodation when he requested leave both under the Family Medical Leave Act and the Americans with Disabilities Act.

71. Defendant was required to initiate an interactive process with Plaintiff to identify the limitations resulting from his disabilities and potential reasonable accommodations that could overcome those limitations.

72. Instead of working with Plaintiff, Defendant failed to engage in the interactive process, and instead terminated him in violation of 42 U.S.C. § 121112.

73. Defendant has not stated an undue hardship it would have suffered by allowing Plaintiff to take leave to tend to his disability.

74. Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, as well as punitive damages and attorney's fees.

## COUNT IV
**Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964**

75. The allegations of Paragraphs 1 through 74 are incorporated by reference as if fully restated herein.

76. Defendant employs fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 2000e(b).

77. At all times relevant hereto, Plaintiff was employed by Defendant and is an "Employee" as defined by 42 U.S.C. § 2000e(f).

78. Defendant discriminated against Plaintiff in the terms and conditions of his employment on the basis of his sex in violation of Title VII of the Civil Rights Act of 1964.

79. Defendant subjected Plaintiff to disparate treatment based upon his sex, including but not limited to subjecting him to sexual harassment and a hostile work environment by way of Tammy Clark and refusing to adequately investigate his claims of sexual harassment and discrimination.

80. The discrimination and harassment was severe and pervasive, thus altering the condition of Plaintiff's employment and creating an abusive work environment.

## COUNT V
### Violation of the Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e *et al.*) – Retaliation

81. The allegations of Paragraphs 1 through 80 are incorporated by reference as if fully restated herein.

82. Defendant employs fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 2000e(b).

83. At all times relevant hereto, Plaintiff was employed by Defendant and is an "Employee" as defined by 42 U.S.C. § 2000e(f).

84. Plaintiff received a Right to Sue letter from the EEOC on August 6, 2021.

85. Plaintiff has satisfied all statutory prerequisites for filing this action.

86. Plaintiff reported the sexual harassment and hostile work environment created by Tammy Clark to Defendant on multiple occasions. Such complaints are a protected activity under Title VII of the Civil Rights Act of 1964.

87. Defendant retaliated against Plaintiff by suspending and ultimately terminating Plaintiff for reporting sexual harassment

88. As a direct result of the discriminatory and wrongful conduct of Defendant, Plaintiff has suffered and continues to suffer from emotional distress, anxiety, and economic loss.

## COUNT VI
### Violations of the Family Medical Leave Act

89. The allegations of Paragraphs 1 through 88 are incorporated by reference as if fully restated herein.

90. Defendant employs fifty or more employees and is an "Employer" as defined by 29 U.S.C. § 2611 (4).

91. At all times relevant hereto, Plaintiff was employed by Defendant and is an "Eligible Employee" as defined by 29 U.S.C. § 2611 (2).

92. Plaintiff suffers hypertension, stress and anxiety which are serious health conditions as defined under the Family Medical Leave Act. 29 U.S.C. § 2611(11).

93. Plaintiff gave notice to Defendant of his need for leave under the Family Medical Leave Act.

94. Qualified employees are permitted 12 weeks or 480 hours of leave, which can be either "intermittent" or "continuous." 29 U.S.C. §2612(b).

95. "Leave" under the Family Medical Leave Act shall be granted to a qualified employee for, *inter alia*, a serious health condition that renders employees unable to perform their job." 29 U.S.C. § 2612.

96. 29 U.S.C. § 2615(a)(2) makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

97. Plaintiff's actions and requests for leave under the Family Medical Leave Act were in direct accordance with his rights under the FMLA.

98. As a direct result of requesting leave under the Family Medical Leave Act, Plaintiff was retaliated against and terminated.

99. Plaintiff's leave was a motivating and determinative factor in Defendant's decision to terminate him.

100. Defendant has at all times herein, continuously and willfully, or with reckless disregard, violated, and continued to willfully, or with reckless disregard, violate the FMLA and applicable regulations.

### COUNT VII
### Violations of the Family Medical Leave Act
### Interference with Right to Take Leave

101. The allegations of Paragraphs 1 through 100 are incorporated by reference as if fully restated herein.

102. It is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA. 29 U.S.C. § 2615(a).

103. Defendant interfered with Plaintiff's right to take leave under the Family Medical Leave Act.

104. Plaintiff was entitled to take leave under the Family Medical Leave Act.

105. Plaintiff gave Defendant appropriate notice of his need for leave and subsequent absence from work under the Family Medical Leave Act.

106. Defendant interfered with the exercise of Plaintiff's right to take leave by refusing to approve his leave request, and instead terminating him.

### COUNT VIII
### Breach of the Implied Covenant of Good Faith and Fair Dealing

107. The allegations of Paragraphs 1 through 106 are incorporated by reference as if fully restated herein.

108. Every contract, whether oral or written, express or implied, has a covenant to the effect that neither party to the contract will do anything in bad faith to prevent the other party to the contract from enjoying the benefits of the contract. This is known as the implied covenant of

good faith and fair dealing, and this covenant applies to the employment agreement between Plaintiff and Defendant.

109. The implied covenant of good faith and faith dealing can be breached in Delaware in four circumstances, including where an employer, through fraud or misrepresentation, manipulates the record to create fictitious grounds to terminate employment.

110. Defendant Rockford breached this covenant by manufacturing a false reason for terminating Plaintiff's employment, namely stating Plaintiff violated Rockford's employee conduct and work rules policy. Defendant claims to have terminated Plaintiff for an alleged violation of employee conduct and work rules policy.

111. Defendant's breach of the implied covenant of good faith and fair dealing has damaged Plaintiff, financially and professionally.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court order the following relief in favor of Plaintiff:

    A. Declare the conduct by Defendant to be in violation of Plaintiff's statutory rights and common law rights.

    B. Award Plaintiff any and all consequential damages, including but not limited to lost wages, salary, employment benefits, back pay, front pay, pre and post judgement interest, equity, liquidated damages, and any or all pecuniary damages.

    C. Award Plaintiff all compensation due as a result of Defendant's violations herein.

    D. Award Plaintiff an equal and additional amount as liquidated damages.

E.  Award Plaintiff costs and reasonable attorneys' fees.

F.  Award Plaintiff pre and post judgment interest at the legal rate.

G.  Any and all such other relief as the Court deems appropriate under the circumstances.

        **ALLEN & ASSOCIATES**

        */s/ Michele D. Allen*
        Michele D. Allen (#4359)
        Emily A. Biffen (#6639)
        4250 Lancaster Pike Suite 230
        Wilmington, DE 19805
        302-234-8600
        302-397-3930 (fax)
        michele@allenlaborlaw.com
        emily@allenlaborlaw.com
        *Attorneys for Plaintiff*

Dated: August 20, 2021